IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

MEINEKE CAR CARE CENTERS, INC.,   )
  )
        Plaintiff,   )
  )
   vs.   )
  )
A.B. FREEMAN ENTERPRISES, LLC   )
and ANTHONY B. FREEMAN,   )
  )
        Defendants.   )

CIVIL ACTION NO.
3:05CV363-MU

**VERIFIED COMPLAINT AND
MOTION FOR A PRELIMINARY
AND PERMANENT INJUNCTION**

Plaintiff, for its Verified Complaint and Motion for a Preliminary and Permanent

Injunction against Defendants, alleges and says as follows:

## THE PARTIES

1.      Plaintiff, Meineke Car Care Centers, Inc., formerly Meineke Discount Muffler

Shops, Inc. ("Meineke"), is a corporation organized and existing under the laws of the State

of North Carolina, with its offices and principal place of business located at 128 South Tryon

Street, Suite 900, Charlotte, Mecklenburg County, North Carolina.

2.      Upon information and belief, Defendant A.B. Freeman Enterprises, LLC

(hereinafter "Defendant A.B. Freeman Enterprises") is a corporation organized and operating

under the laws of the State of Georgia with its principal place of business located in the State

of Georgia.

3.      Upon information and belief, Defendant Anthony B. Freeman (hereinafter

"Defendant Freeman") is a citizen and resident of the State of Georgia.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under and by

virtue of 28 U.S.C. § 1331, in that this is an action arising under the laws of the United States.

5.     This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), in that this is an action arising under an Act of Congress relating to trademarks.

6.     This Court also has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1338(b) in that this action presents one or more claims of unfair competition that are joined with one or more substantial and related claims under the trademark laws.

7.     This Court also has supplemental jurisdiction over the subject matter of the First and Third Claims for Relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367 and the case law decided thereunder.

8.     Venue of this action in this judicial district and division is proper under and by virtue of 28 U.S.C. § 1391(b)(2), in that, among other things, a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district and division. Venue also is appropriate in this judicial district and division because Defendants contractually consented to this venue in the Franchise and Trademark Agreement they entered into with Meineke.

9.     This Court has *in personam* jurisdiction over Defendants under and by virtue of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and North Carolina's "long arm" statute, N.C. Gen. Stat. § 1-75.4. Additionally, this Court has personal jurisdiction over Defendants because they consented to such jurisdiction in the Franchise and Trademark Agreement they entered into with Meineke.

2

## GENERAL ALLEGATIONS
## The Nature of Meineke's Business

10.     Meineke grants franchises to qualified persons to establish and operate automotive repair shops under a standard, unique and uniform system developed by Meineke, and grants to those persons the right to use Meineke's federally-registered trade name, logo and other proprietary marks.

## Meineke Trade Name, Logo and Service Marks

11.     Meineke is the owner of the trade name "Meineke" and various service marks. The Meineke name and all of its marks and logos are registered with the United States Patent and Trademark Office.

12.     The trade name "Meineke" is currently in use, amongst other registrations, under registration numbers 1,241,466; 1,207,490; 1,434,915; 1,610,116; 1,620,331; 2,022,824; and 1,191,431.

13.     All of Meineke's proprietary names, logos and marks remain in full force and effect, unrevoked and uncancelled. Meineke has given notice to the public that its name, logo and marks are registered with the United States Patent and Trademark Office by displaying with the name, logo and marks the letter "R" enclosed within a circle.

14.     Since July 1972, hundreds of millions of dollars have been spent to advertise the Meineke name, logo and marks.

15.     As a result, the Meineke name, logo and marks have become famous, and are strongly associated in the minds of the consuming public throughout the United States and parts of Canada with the products and services offered by Meineke and its franchised chain of independent exhaust and automotive undercar repair shops.

3

16.     The Meineke name, logo and marks have acquired secondary meaning, enjoy an excellent reputation among the consuming public and constitute property of the greatest value to Meineke.

17.     No goods or services bearing the name "Meineke" were manufactured, distributed or sold to the general public prior to the first use by Meineke and its predecessors in interest.

18.     More particularly, since July 1972, all goods and services lawfully manufactured, distributed or sold in the United States under the Meineke name, logo and marks have been manufactured, distributed or sold pursuant to licenses granted by Meineke.

19.     Each Licensee who so manufactured, distributed or sold such goods and services promised and agreed as a condition of the license to strict control and approval by Meineke over the quality of the goods and services offered by the licensee, as well as the quality of advertising in connection with those goods and services.

## The Franchise Agreement

20.     The relationship between Meineke and its franchisees is governed by the terms of the franchise and trademark agreements entered into between them.

21.     On or about May 13, 2002, Defendant A.B. Freeman Enterprises became a Meineke franchisee by entering into a Meineke Franchise and Trademark Agreement ("Franchise Agreement") to operate Meineke Shop No. 869 ("Shop No. 869"), which is located at 2107 Metropolitan Parkway, Atlanta, Georgia 30315. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit 1**, and is incorporated by reference as if fully set forth herein.

4

22.     Defendant Freeman executed an Owners' Personal Guaranty, personally guaranteeing Defendant A.B. Freeman Enterprises' performance under the Franchise Agreement for Shop No. 869. See Exhibit 1, Schedule D.

23.     Pursuant to the Franchise Agreement, Defendants became authorized: (i) to operate an automotive repair shop under the trade name "Meineke" under the Meineke system; (ii) to display the Meineke name, logo and marks; (iii) to receive training and access to Meineke's methods, procedures and techniques; and (iv) to participate in an established network of licensed muffler, exhaust and undercar repair shops, with a product and service for which Meineke has created substantial demand through the maintenance of the highest quality standards and extensive advertising.

24.     Pursuant to the Franchise Agreement, Defendants agreed, among other things, to: (i) pay Meineke on a weekly basis a franchise fee, or royalty, in an amount equal to seven percent (7%), five percent (5%), four percent (4%), or three percent (3%) of the shop's gross revenues depending on the type of product sold or service performed (Exhibit 1 at Article 3.2); (ii) pay Meineke on a weekly basis an advertising contribution in an amount equal to eight percent (8%) of the shop's gross revenues (Exhibit 1 at Article 3.4); and (iii) furnish Meineke with accurate weekly business reports of the shop's gross revenues (Exhibit 1 at Article 9.3).

### Defendants' Breaches of the Franchise Agreement

25.     During the term of the Franchise Agreement, Defendants breached their obligations and promises under, among other things, Articles 3 and 9 of the Franchise Agreement by failing to submit to Meineke accurate weekly business reports of the shop's gross revenues, and by failing to pay Meineke all of the franchise fees and advertising

5

contributions incurred by them during the term of the Franchise Agreement.

26. On August 14, 2003, Meineke sent Defendants a Notice of Default, informing them that they were in default of the Franchise Agreement because they had failed to submit accurate weekly business reports and they had failed to pay all of the weekly franchise fees and advertising contributions incurred by them. A copy of Meineke's August 14, 2003 Notice of Default is attached to the Affidavit of Michael Carlet, **Exhibit 2** to this Complaint, and is incorporated by reference as if fully set forth herein.

27. Defendants cured the August 14, 2003 default, but again neglected to pay all of their weekly franchise fees and advertising contributions. Accordingly, Meineke sent Defendants another Notice of Default on February 6, 2004. A copy of Meineke's February 6, 2004 Notice of Default is attached to the Affidavit of Michael Carlet and is incorporated by reference as if fully set forth herein.

28. Defendants cured the second Notice of Default. However, Defendants failed yet again to timely pay all of their weekly franchise fees and advertising contributions. Accordingly, Meineke sent Defendants a third Notice of Default on August 5, 2004. A copy of Meineke's August 5, 2004 Notice of Default is attached to the Affidavit of Michael Carlet and is incorporated by reference as if fully set forth herein.

29. Defendants failed to cure their defaults. Therefore, on March 4, 2005, Meineke sent Defendants a Notice of Intention to Terminate Franchise and Trademark Agreement, notifying Defendants that they had sixty (60) additional days to cure their defaults or their license would terminate. A copy of Meineke's March 4, 2005 Notice of Intention to Terminate is attached to the Affidavit of Michael Carlet and is incorporated by reference as if fully set forth herein.

6

## Meineke's Termination Of Defendants' Franchise Agreement

30.     Defendants failed to cure their defaults within the sixty day period. Nonetheless, Meineke continued trying to work with Defendants past the sixty-day period. However, Defendants failed to fulfill their obligations.  Accordingly, Meineke terminated Defendants' license to operate Shop No. 869 effective August 5, 2005.  A copy of Meineke's August 8, 2005 letter notifying Defendants of the termination is attached to the Affidavit of Michael Carlet and is incorporated by reference as if fully set forth herein.

31.     Since their termination as authorized Meineke franchisees, Defendants have failed to pay the outstanding amount of $82,187.30 in franchise fees and advertising contributions, after being credited for merchandise account payments.  See Carlet Affidavit.

32.     Defendants' breaches and defaults have directly and proximately caused Meineke to lose the contractually agreed to royalties and advertising contributions that it would have received during the years remaining on the Franchise Agreement if Defendants had not breached and defaulted under the Franchise Agreement.  Defendants' Franchise Agreement was not due to expire until May 13, 2017.  As a general rule, once a franchise is terminated, it takes Meineke approximately 3 years to re-franchise that terminated franchisee's market area and/or business performance.  As such, Meineke is entitled to the lost royalties and advertising contributions it was contractually entitled to for 3 out of the over 11 years remaining on Defendants' Franchise Agreement, in the present value amount of $317,986.94 in prospective franchise fees and advertising contributions.  See Carlet Affidavit.

Case 3:05-cv-00363-GCM   Document 1   Filed 08/19/05   Page 7 of 21

## Defendants' Post-Termination Violations

33.     In Article 15 of the Franchise Agreement, Defendants agreed, among other

things, that upon the effective date of termination they would:

a.     "pay [to Meineke] all royalties, MAF payments, amounts owed for
purchases from [Meineke] or [its] Affiliates, interest due on any of the
foregoing and all other amounts owed to [Meineke] or [its] Affiliates
which are then unpaid;"

b.     "not directly or indirectly at any time or in any manner use any Mark, any
colorable imitation of any Mark or any other indicia of a Meineke Shop;"

c.     "take such action as may be required to cancel all fictitious or assumed name
registrations relating to [their] use of any Mark;"

d.     "notify the telephone company and all telephone directory publishers of the
termination or expiration of any rights [they] may have to use any telephone number
and any regular, classified or other telephone directory listings associated with any
Mark and to authorize transfer of the number to [Meineke] or at [Meineke's] direction.
[They would] immediately execute such instruments and take such steps as [Meineke]
deem[s] necessary or appropriate to transfer and assign each such telephone number.
[They] irrevocably appoint[ed] [Meineke's] then-President as [their] duly authorized
agent and attorney-in-fact to execute all instruments and take all steps to transfer and
assign each such telephone number;"

e.     "if [Meineke] do[es] not exercise [its] right to take possession of the Premises of
[their] Shop pursuant to Section 15.4, promptly remove from the Premises, and
discontinue using for any purpose, all signs, fixtures, posters, decor items, advertising
materials, forms and other materials and supplies which display any of the Marks or
any distinctive features, images, or designs associated with Meineke Shops and, at
[their] expense, make such alterations as may be necessary to distinguish the Premises
so clearly from its former appearance as a Meineke Shop as to prevent any possibility
of confusion by the public;"

f.     "immediately cease to use all Confidential Information and return to [Meineke] all
copies of the Operations Manual and any other confidential materials which
[Meineke] ha[d] loaned to [them];"

g.     "immediately cease to use all computer software incorporating any
of the Marks or any of [Meineke's] Confidential Information."

34.     Defendants also agreed, pursuant to Article 11.4 of the Franchise Agreement,

that upon termination of the Franchise Agreement and for a period of one (1) year from the

Case 3:05-cv-00363-GCM   Document 1   Filed 08/19/05   Page 8 of 21

date of compliance they would not, "directly or indirectly (such as through corporations or other entities owned or controlled by [Defendants]) own a legal or beneficial interest in, manage, operate or consult with": (a) any business operating at the premises of Shop No. 869 or within a radius of six (6) miles of the premises of Shop No. 869 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Shop existing as of the date Defendants' Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

35. This covenant not to compete is reasonably necessary to allow Meineke the opportunity to re-establish its presence in the particular market and to re-capture the goodwill lost by Defendants' ceasing to operate an authorized Meineke Shop, and to protect other Meineke franchisees from unfair competition by Defendants.

36. Notwithstanding Defendants' termination as Meineke franchisees for Shop No. 869, Defendants continue to operate a competing business from the premises of former Shop No. 869, and they continue to display Meineke's tradename, logo and marks. See Declaration of Robert Margetts, which is attached hereto as **Exhibit 3**, and is incorporated by reference as if fully set forth herein.

37. At former Shop No. 869, Defendants continue to display Meineke's name and signs, and they continue displaying Meineke's yellow and black banner, which is customarily used by Meineke franchisees and advertises the services provided by Meineke. See Margetts Declaration and the photographs attached thereto.

38. At Shop No. 869, Defendants also continue to offer the same services they offered when they were authorized Meineke franchisees. See Margetts Declaration. By

9

continuing to operate a business using the Meineke trade name, logo and marks, Defendants are unfairly competing with Meineke and causing customer confusion as to the origin of the services being offered at this location.

## The Irreparable Harm Being Caused to Meineke
## by Defendants' Violations of the Post-Term Covenants Not to Compete

39.     Defendants were trained in and given access to Meineke's Confidential Information and are likely using the same in the operation of their automotive undercar repair business located at the site of former Shop No. 869.

40.     During their term as franchisees for Shop No. 869, Defendants obtained or had access to detailed knowledge of the Meineke system including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aids, business forms, accounting procedures, marketing reports, informational bulletins, product developments, suppliers' discounts, and inventory systems.  Meineke has expended considerable time, effort, and resources training Defendants in the operation of their Meineke Shop using the Meineke system.  Defendants have been given access to detailed knowledge of the Meineke system, including knowledge of pricing proforma, operating procedures, marketing methods, and financial data used in the operation of a Meineke Shop.

41.     In Article 11.1 of their Franchise Agreement, Defendants agreed they would not reveal any proprietary Meineke information, or use such proprietary information in connection with any business or venture in which they have a direct or indirect interest.  They further recognized in Article 11.1 that the Meineke system, in its entirety, constitutes proprietary information including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aides, business forms, accounting procedures, marketing reports, informational bulletins, product development, suppliers' discounts and inventory

10

systems. It is a practical certainty that Defendants are using such information in the conduct of their new business.

42.     When Meineke loses a franchise shop in a particular market, Meineke seeks to open a replacement Meineke shop in order to retain its goodwill and developed market share in the particular market. When a former franchisee is allowed to violate the covenant not to compete, such as Defendants here, Meineke's attempts to re-develop the market are severely hampered because of the former franchisee's continued operation utilizing the knowledge and training gained in the relationship with Meineke and palming off of the goodwill developed as a Meineke shop. One of the purposes of the one-year covenant against competition is to assist Meineke in its development of a replacement Meineke shop.

43.     No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its other licensees and with the franchise-buying public in general as a result of Defendants' unauthorized conduct.

44.     The harm that would result to Defendants from an Order of this Court directing them to cease the above-described breaches of the post-termination provision of their Franchise Agreement and to cease engaging in the above-described acts of unfair competition is not sufficient to justify permitting them to continue to irreparably harm the rights and interests of Meineke and its existing franchisees.

## The Irreparable Harm Being Caused To Meineke
## By Defendants' Infringement Upon The Meineke Marks

45.     Defendants' on-going use of the Meineke name, logo, and marks is likely to cause confusion among the consuming public as to the source of origin of the goods and services offered by Defendants' shop and a loss of valuable goodwill to Meineke.

11

46.     Because Defendants continue to utilize the Meineke name, logo, and marks and operate from the exact same location as their former Meineke shop, it is likely that customers will blame Meineke for any problems that they experience as a result of Defendants' work on their automobiles, even though Meineke, in fact, has no control whatsoever over the quality of the products or services now being sold by Defendants to such customers.

47.     Because Defendants are no longer subject to Meineke's uniform procedures, techniques and quality control standards, and because they are operating what could appear to be an authorized Meineke franchise, Meineke will suffer a loss of goodwill with customers in the Atlanta, Georgia area who are being, or have been, or may be victimized by Defendants' business practices.

48.     It is likely that it will be impossible, as a practical matter, for Meineke to re-establish its former good reputation with lost customers who have been victimized by Defendants once those customers have switched to other automobile repair facilities.

49.     In addition to the irreparable harm now being caused to Meineke by Defendants' wrongful conduct, Meineke owes a duty to over 850 franchises throughout the United States, Canada, Mexico and the Dominican Republic to protect them from this public deception and unfair competition by former franchisees who continue to use the Meineke trade name, logo, and marks without paying for that valuable privilege.

50.     No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its innocent franchisees and with the franchise-buying public in general as a result of Defendants' deception and unfair competition.

12

51. The harm that would result to Defendants from an Order of this Court directing Defendants to cease the above-described breaches of the post-termination provisions of the Franchise Agreement, and to cease infringing Meineke's name, logo and marks, is not sufficient to justify permitting Defendants to continue to deceive and confuse the consuming public generally, and to irreparably harm the resale rights and interests of Meineke and its existing franchisees.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

52. Meineke repeats and re-alleges Paragraphs 1 through 51 above, which are incorporated by reference herein.

53. Meineke has performed all of the obligations required of it under the Franchise Agreement with regard to Shop No. 869.

54. Despite Meineke's performance, Defendants have breached their obligations and promises under the Franchise Agreement by failing and refusing to submit to Meineke accurate weekly business reports of their shop's gross revenues and by failing to pay Meineke the full amount of franchise fees and advertising contributions incurred by them prior to their termination as Meineke franchisees.

55. Accordingly, Meineke is entitled to a judgment against Defendants in the amount of $82,187.30, representing past-due franchise fees and advertising contributions.

56. As a result of Defendants' breaches of the Franchise Agreement, Meineke also has been deprived of the benefit of its bargain under the Franchise Agreement, which consists of, among other things, the franchise fees and advertising contributions that it would have received during the 3-year period following termination of the license for Shop No. 869.

13

57.     Accordingly, Meineke also is entitled to a judgment against Defendants in the amount of the franchise fees and advertising contributions that Meineke would have been paid by Defendants for 3 out of the years remaining on the terms of the Franchise Agreement for Shop No. 869 (minus all expenses saved by reason of Defendants' termination) had Defendants not breached the Franchise Agreement, in the amount of $317,986.94.

58.     Additionally, Defendants are in breach of the non-compete covenant contained in Article 11.4 of the Franchise Agreement by reason of their continued operation of an automobile repair business offering the repair or replacement of exhaust system components, brake system components, or shocks and struts at exactly the same location as their former authorized Meineke Shop No. 869.

59.     In addition to the monetary relief prayed for above, Meineke is entitled to a Preliminary and Permanent Injunction directing Defendants to cease and refrain from for a period of one (1) year from the date of compliance, "directly or indirectly (such as through corporations or other entities owned or controlled by them), owning a legal or beneficial interest in, managing, operating or consulting with": (a) any business operating at the premises of Shop No. 869 or within a radius of six (6) miles of the premises of Shop No. 869 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Shop existing as of the date Defendants' Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

## SECOND CLAIM FOR RELIEF
### (Trade Mark Infringement)

60.     Meineke repeats and re-alleges herein paragraphs 1 through 59 above, which

14

are incorporated by reference herein.

61.     Since their termination by Meineke, Defendants have deliberately and intentionally used Meineke's federally registered name, logo and marks in interstate commerce without Meineke's permission or authority, and are continuing to do so now, despite of and in open defiance of Meineke's demands that they cease such unlawful activity.

62.     The nature and extent of Defendants' wrongful and unauthorized use of Meineke's trade name, logo, and marks is such that Defendants' conduct is likely to cause actual confusion, mistake and deception among the consuming public.

63.     Defendants' unauthorized use of Meineke's federally registered trade name, logo, and marks constitutes trademark infringement in violation of, among other things, 15 U.S.C. §1114(1)(a).

64.     As a direct and proximate result of Defendants' acts of trademark infringement, Meineke has suffered actual pecuniary losses.

65.     In addition, unless Defendants are restrained and enjoined from continuing to infringe Meineke's federally registered name, logo, and marks, Defendants' unlawful conduct will seriously erode and damage Meineke's valuable goodwill, commercial reputation, name, logo and marks, and will continue to cause confusion, mistake and deception among the consuming public, including particularly those persons seeking authorized Meineke products and services, thus causing Meineke to suffer irreparable harm, for which there is no fully adequate legal remedy.

66.     By reason of the foregoing, Meineke is entitled to a Preliminary and Permanent Injunction against Defendants, restraining and enjoining them from any further use of Meineke's trade name, logo, marks, advertising, forms, manuals, products, computer

15

software, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

67.     More particularly, in accordance with 15 U.S.C. §§ 1116 and 1118, Meineke is entitled to a Preliminary and Permanent Injunction directing Defendants to: (i) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo or marks, or which contain a name, logo or mark confusingly similar to the Meineke name, logo or marks, including, but not limited to the black and yellow signage that lists Meineke's services and the Meineke signs; (ii) cease making any representation or statement that Defendants or the business located at 2107 Metropolitan Parkway, Atlanta, Georgia 30315 are in any way approved, endorsed or licensed by Meineke, or is identified with Meineke in any way; and (iii) return to Meineke all signs, forms, manuals, supplies, computer software, products, merchandise and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

68.     In addition to the injunctive relief prayed for in the preceding paragraph, Meineke is entitled to a judgment against Defendants, pursuant to 15 U.S.C. § 1117(a) and (b), in the amount of Defendants' profits and/or Meineke's damages, since their termination as Meineke franchisees.

69.     In accordance with 15 U.S.C. § 1117(a), the amount of Defendants' profits is measured by Defendants' total sales since their termination as Meineke franchisees.

70.     Accordingly, by reason of Defendants' acts of trademark infringement, Meineke is entitled to a judgment against Defendants, pursuant to 15 U.S.C. § 1117(a) and

16

(b), in an amount to be determined at trial, plus the costs of this action, as authorized by 15 U.S.C. § 1117(a) and (b).

71.    In addition, pursuant to 15 U.S.C. § 1117(b), given that Defendants' conduct in violation of 15 U.S.C. § 1114(1)(a) constitutes the repeated and intentional use by Defendants of one or more marks or designations, knowing that such marks or designations are counterfeit marks, Meineke is entitled to an Order trebling the amount of profits which it is entitled to recover from Defendants.

## THIRD CLAIM FOR RELIEF
### (Attorneys' Fees)

72.    Meineke repeats and realleges Paragraphs 1 through 71 above, which are incorporated by reference herein.

73.    Article 17.6 of the Franchise Agreement provides:

"The Party who prevails in any arbitration or judicial proceeding will be awarded its costs and expenses incurred in connection with such proceedings, including reasonable attorneys' fees."

74.    In accordance with the provisions of Article 17.6 of the Franchise Agreement, Meineke is entitled to recover its costs and expenses, to include its reasonable attorneys' fees, in the event it prevails in this proceeding.

WHEREFORE, Meineke Car Care Centers, Inc. respectfully prays that the Court:

1.    Enter a Judgment against Defendants, in accordance with Meineke's First Claim for Relief, in the amount of $82,187.30, representing the amount of franchise fees and advertising contributions due to Meineke.

2.    Enter a Judgment against Defendants, in accordance with Meineke's First Claim for Relief, in the amount of the franchise fees and advertising contributions that Meineke would have been paid by Defendants for three out of the years remaining on

17

Franchise Agreement for Shop No. 869 (minus all expenses saved by reason of Defendants' termination), which amount Meineke has computed to be $317,986.94.

3.      Enter a Preliminary and Permanent Injunction against Defendants in accordance with Meineke's First Claim for Relief, directing Defendants, their agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of said Preliminary and Permanent Injunction, by personal service or otherwise, to cease and refrain, for a period of one year from the date they begin compliance with such covenant not to compete, from "directly or indirectly (such as through corporations or other entities owned or controlled by them), owning a legal or beneficial interest in, managing, operating or consulting with": (a) any business operating at the premises of Shop No. 869 or within a radius of six (6) miles of the premises of Shop No. 869 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Shop existing as of the date Defendants' Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

4.      Enter a Preliminary and Permanent Injunction against Defendants in accordance with Meineke's Second Claim for Relief, directing Defendants, their agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of said Preliminary and Permanent Injunction, by personal service or otherwise, to: (i) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke

18

name, logo or marks, or which contain a name, logo or mark confusingly similar to the Meineke name, logo or marks, including, but not limited to the black and yellow signage that lists Meineke's services and the Meineke signs; (ii) cease making any representation or statement that Defendants or the business located at 2107 Metropolitan Parkway, Atlanta, Georgia 30315 are in any way approved, endorsed or licensed by Meineke, or is identified with Meineke in any way; and (iii) return to Meineke all signs, forms, manuals, supplies, computer software, products, merchandise and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

  5. Enter a Judgment against Defendants, in accordance with Meineke's Second Claim for Relief, in the amount of profits and/or Meineke's damages since Defendants' termination as Meineke franchisees, trebling such amount due to Defendants' intentional and repeated use of Meineke's trade marks.

  6. Enter a Judgment against Defendants, in accordance with Meineke's Third Claim for Relief, in the amount of Meineke's reasonable attorneys' fees incurred in bringing this action.

  7. Award Meineke such other and further relief as the Court may deem just and proper.

  8. Meineke further tenders to and respectfully prays that the Court treat this Verified Complaint and the Exhibits attached to it as an Affidavit in support of Meineke's Motion for a Preliminary and Permanent Injunction.

19

This the 18th day of August 2005.

Amy K. Reynolds
N.C. State Bar No. 21266
Attorney for Plaintiff Meineke Car Care Centers, Inc.
128 South Tryon Street, Suite 900
Charlotte, NC 28202
Telephone: (704) 644-8144

20

## VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

MICHAEL CARLET, being first duly sworn, deposes and says that he is the Chief

Financial Officer of Meineke Car Care Centers, Inc., formerly Meineke Discount Muffler

Shops, Inc. (hereinafter referred to as "Meineke"); that, as such, he is authorized to make this

oath and verification; that, in his capacity as the Chief Financial Officer of Meineke, he is a

custodian for all of the books and records of Meineke, and is familiar with those books and

records; that, in his capacity as the Chief Financial Officer of Meineke, he is familiar with

Meineke's business operations, including its business dealings and its relationship with its

franchisees generally and with Defendants in particular; that he has read the foregoing

Verified Complaint and Motion for a Preliminary and Permanent Injunction; that he knows

the contents thereof to be true of his own personal knowledge, except for those allegations

made in the Verified Complaint upon information and belief, and except for those allegations

contained in the Verified Complaint that are verified by the Declaration of Robert Margetts;

and that, as to the allegations contained in the Verified Complaint which are made upon

information and belief, he believes them to be true.

Dated this the ___ 18 ___ day of August 2005.



Michael Carlet

Sworn and subscribed to before me
this 18th day of August, 2005.



Notary Public
My Commission Expires: 9|26|2009

21